UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \* \* \*

UNITED STATES OF AMERICA,

    Plaintiff,

v.

RICKY CARTER, JR.,

    Defendant.

3:17-cr-00003-LRH-WGC

ORDER

Before the court is defendant Ricky Carter Jr.'s motion to suppress. ECF No. 23. The United States filed a response (ECF No. 24), to which Carter replied (ECF No. 25). The court finds that probable cause supported the search warrant for the four cellphones found in Carter's car during his arrest. Moreover, even if the facts that Carter asserts are missing from the affidavit are considered reckless or intentional omissions, he has not established that they were material to the probable-cause determination. The court will therefore deny the motion.

**I.**     **Background**

Carter is charged by indictment with one count of felon in possession of a firearm under 18 U.S.C. §§ 922(g)(1), 924(a)(2). ECF No. 1. Reno Police Department ("RPD") officers discovered the firearm after initiating a traffic stop of Carter's vehicle on November 30, 2016. ECF No. 23 at 2. The events leading up to the traffic stop, which also underlie the search warrant at issue, began two months earlier.

On October 1, RPD officers responded to a shooting at a bar in Reno, Nevada. ECF No. 24 at 1–2. After the officers arrived on scene, they discovered the victim lying in the parking lot with gunshot wounds. Surveillance video from a restaurant next door revealed an individual later

identified as Andre Wagner running with a handgun in one hand and an item appearing to be an extended magazine in the other. Wagner was seen running down an alley towards the parking lot where the victim was later found and firing the gun in that direction.

The video also revealed the presence of Dartanyan Perkins, who, along with Wagner and Carter, is a member of the Crips gang. *Id.* at 2. Vehicles belonging to Wagner and Carter were seen on video fleeing from the area, but it does not appear that the video ever revealed Carter's presence at the shooting. However, the police eventually learned that Carter and Perkins were at a local casino several hours before the shooting and had argued with the victim and his cousin, who are both members of the rival Bloods gang. Based on this incident and the fact that Carter's vehicle was at the crime scene, officers assigned to the Regional Gang Unit began searching for Carter in order to question him.

On November 10, 2016, Wagner was arrested for the shooting. ECF No. 23-1 at 2. Over the next few days, he made several recorded phone calls from the detention center to the same phone number, which the police learned belongs to his girlfriend. During one of these calls, Wagner dialed his girlfriend's number but spoke to Carter, who was presumably with Wagner's girlfriend or had access to her phone. Wagner instructed Carter to tell Perkins, who was also caught on video at the crime scene, to flee. ECF No. 23 at 4; ECF No. 23-2 at 3. During another call to his girlfriend, Wagner instructed her to remain in contact with Carter. ECF No. 23-2 at 3.

Several weeks later, on November 30, 2016, officers assigned to the Regional Gang Unit coincidently pulled alongside Carter's vehicle in traffic. ECF No. 24 at 2. Due to their investigation of the October 1 shooting, the officers recognized Carter as the driver and recalled that his license was indefinitely suspended. The officers therefore decided to initiate a traffic stop.

Once Carter's vehicle had come to a stop, the front and rear passenger doors opened and two men began fleeing. *Id.* at 3. Carter, however, remained in the vehicle. With at least some of the passenger doors still open, the officers were able to see a black semi-automatic handgun with an extended magazine near the center console. The gun appeared to match the weapon seen from the video of the shooting.

Aware that Carter was a convicted felon, the officers arrested Carter and searched him and his vehicle. *Id.* In turn, they discovered one cellphone on his person and three cellphones inside the vehicle within Carter's reach.

On January 12, 2017, Detective Edward Wilson of the Sparks Police Department and Regional Gang Unit applied for a warrant to search all electronically-stored files from the four cellphones found during Carter's arrest. *Id.* In his affidavit, Detective Wilson attested that he believed that evidence related to the October 1 shooting would be found on at least some of these phones. ECF No. 23-2 at 5.

In support of this assertion, Detective Wilson cited the aforementioned calls that Wagner placed from detention. Detective Wilson attested that, "[d]ue to the amount of communication between Wagner and Carter," he believed that an examination of the cellphones could corroborate certain elements of the shooting investigation. ECF No. 23-2 at 5. At no point, however, did he explicitly state that none of the calls that Wagner placed from detention were to any of the four cellphones.

Detective Wilson did cite the fact that both men were Crips gang members and that "[it] is common for people involved in criminal activity to converse with others with the use of cellular phones by calls, text (SMS) messages, and emails regarding their criminal activity." *Id.* at 4–5. He also briefly noted an incident in which "a confidential informant heard the account of the crime first hand from Wagner, Perkins and their associates all while at Ricky Carter's house." *Id.* at 4.

On January 12, 2017, a Reno magistrate issued a search warrant for the four cellphones. During the resulting search, Detective Wilson located text messages between Carter and the individual who sold him the firearm found in his vehicle, including photographs of the gun and a negotiation over its price. ECF No. 24 at 4.

Carter now moves to suppress this evidence.

**II. Legal standard**

The Fourth Amendment to United States Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches

3

and seizures, shall not be violated and no warrants shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Any evidence resulting from an unconstitutional search or seizure cannot be admitted as evidence against the victim of the search and must therefore be suppressed. *See Wong Sun v. United States*, 371 U.S. 471 (1963).

In determining whether probable cause to issue a warrant exists, the court considers the totality of the circumstances. *United States v. Gourde*, 440 F.3d 1065, 1069 (9th Cir. 2006) (en banc). "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 426 U.S. 213, 238 (1983). Only a "fair probability" is required, "not certainty or even a preponderance of the evidence." *Gourde*, 440 F.3d at 1069. Rather than conduct a *de novo* review of the sufficiency of a supporting affidavit, a reviewing court must give the magistrate's probable cause determination "great deference" and uphold that determination if supported by a "substantial basis." *Gates*, 426 U.S. at 236 (citations omitted).

### III. Discussion

Carter's primary argument is that the magistrate erred in determining that there was probable cause that evidence of the October 1 shooting would be found on the four cellphones and thus erred in issuing the search warrant. Moreover, Carter challenges certain components of the information in the affidavit, arguing that they were either stale or included material omissions. The court will address each argument in turn.

#### A. Probable cause supported the warrant's issuance

Carter devotes the bulk of his motion to arguing that Detective Wilson's alleged omissions in his affidavit misled the magistrate into believing that probable cause existed. While the court addresses this specific contention below, it will first consider whether the totality of the information presented in the affidavit established probable cause.

It is evident that the phone calls that Wagner placed from pre-trial detention were key to the probable-cause determination. The magistrate was aware that Wagner had spoken directly to

4

Carter[1] during one of these calls and explicitly instructed him to tell Perkins, a possible accomplice in the shooting, to leave town. Moreover, Wagner instructed his girlfriend to remain in contact with Carter. The United States argues that the logical inference drawn from this information is that it is likely that Carter would have used at least one of the four phones to communicate with Perkins and Wagner's girlfriend regarding the shooting. This court agrees.

While this information might itself establish probable cause, other facts in the affidavit support this finding. Specifically, the magistrate was aware that Carter's vehicle was seen on video fleeing from the shooting and that both Wagner and Carter are Crip members. Carter counters that gang affiliation is not sufficient to establish a nexus between Wagner's actions and possible evidence contained within Carter's cellphones. This argument, however, ignores the fact that courts must examine the totality of the circumstances in making probable-cause determinations. Carter's possible presence at the shooting and known gang affiliation is important context for Wagner's calls from detention, as these facts explain why these two men would be exchanging incriminating information and increase the likelihood that such information would be found on Carter's phones.

Taken as a whole, these facts demonstrate that there was a substantial basis for the magistrate's probable-cause determination.

**B.     The information that supported the warrant was not stale**

An affidavit's facts must demonstrate the probability that, at the time the magistrate issues the warrant, the evidence that law-enforcement officers seek will be present in the location they intend to search. *Durham v. United States*, 403 F.2d 190, 194 (9th Cir. 1968). "Information offered to support a search warrant application becomes stale when enough time has elapsed such that there is no longer sufficient basis to believe that the items to be seized are

---

[1] Without analysis, Carter cites the fact that the police report filed shortly after Wagner's calls could not identify the man he spoke with during the first call regarding Perkins, describing the other speaker as "an identified male." *E.g.*, ECF No 23-1 at 2. Detective Wilson, however, identified the man as Carter in his affidavit. The United States counters with a logical explanation for this purported discrepancy: Carter was arrested several weeks *after* the calls took place and the report was filed, at which point Detective Wilson became familiar with his voice. ECF No. 24 at 8.

5

still on the premises." *United States v. Grant*, 682 F.3d 827, 835 (9th Cir. 2012) (citation omitted). "The mere lapse of substantial amounts of time is not controlling in a question of staleness." *United States v. Dozier*, 844 F.2d 701, 707 (9th Cir. 1988). Rather, courts "evaluate staleness in light of the particular facts of the case and the nature of the criminal activity and property sought." *United States v. Pitts*, 6 F.3d 1366, 1369 (9th Cir. 1993) (internal quotation marks omitted) (quoting *United States v. Greany*, 929 F.2d 523, 525 (9th Cir. 1991)).

Carter argues that the information that Detective Wilson cited in his affidavit was stale because he filed the warrant application over two months after Wagner placed his phone calls from detention. ECF No. 23 at 11. This argument is without merit, as it ignores the fact that Carter's cellphones were seized less than three weeks after Wagner's calls and then remained in police custody. Moreover, it is well established that even entry-level cellphones available today are hand-held computers that can access many data formats—e.g., video, audio, text—and include ample storage capacity. It was therefore highly probable that evidence related to the October 1 shooting would still be found on Carter's cellphones at the time of the search.

### C. Because the affidavit's purported omissions are not material to the probable-cause determination, Carter is not entitled to relief under *Franks v. Delaware*

Carter argues that Detective Wilson omitted information in his affidavit that would have affected and potentially altered the magistrate's probable-cause determination. He contends that a hearing is required to address these purported omissions. ECF No. 23 at 6. Although Carter has failed to cite any authority regarding this type of challenge, the court will construe his assertion as a request for a *Franks* evidentiary hearing.

"Under *Franks* [*v. Delaware*, 438 U.S. 154 (1978)], a criminal defendant has the right to challenge the veracity of statements made in support of an application for a search warrant." *United States v. Perkins*, 850 F.3d 1109, 1116 (9th Cir. 2017) (citing *Franks*, 438 U.S. at 155–56). "To prevail on a *Franks* challenge, the defendant must establish two things by a preponderance of the evidence: first, that 'the affiant officer intentionally or recklessly made false or misleading statements or omissions in support of the warrant[,]' and second, that the false or misleading statement or omission was material, i.e., 'necessary to finding probable

6

cause.'" *Id.* (quoting *United States v. Martinez-Garcia*, 397 F.3d 1205, 1214–15 (9th Cir. 2005)). "A defendant is entitled to an evidentiary hearing on the validity of the affidavit underlying a search warrant if the defendant can make a substantial preliminary showing" of both prongs. *United States v. Reeves*, 210 F.3d 1041, 1044 (9th Cir. 2000).

Moreover, the Ninth Circuit has explicitly held that intentional or reckless omissions of information can provide grounds for relief under *Franks*. *United States v. Stanert*, 762 F.2d 775, 781 (9th Cir. 1985) ("By reporting less than the total story, an affiant can manipulate the inferences a magistrate will draw. To allow a magistrate to be misled in such a manner could denude the probable cause requirement of all real meaning."). In order to ultimately prevail on a *Franks* challenge premised on an omission, "[a] defendant . . . must also show that the affidavit purged of [any] falsities and supplemented by the omissions would not be sufficient to support a finding of probable cause." *Id.* at 782.

Here, Carter argues that the affidavit misled the magistrate by failing to explicitly state that none of Wagner's calls from detention were placed to any of Carter's four cellphones. ECF No. 23 at 6. He contends that there would not be probable cause to search the cellphones if they did not receive Wagner's calls from detention. Carter further argues that the affidavit failed to inform the magistrate that two other individuals fled from Carter's vehicle during the traffic stop, which left the magistrate "with the impression that all four phones belong to . . . Carter." *Id.* at 7–8.

Finally, Carter also challenges the affidavit's reference to the confidential informant ("CI") who allegedly heard an account of the shooting from Wagner and Perkins at Carter's home. *Id.* at 9–10. Carter argues that the affidavit misled the magistrate into falsely believing that Carter was also present during this exchange. He contends that this implication is material because the affidavit cites "the amount of communication between Wagner and Carter" as the crux of why the warrant should be issued. Carter also asserts that the affidavit failed to inform the magistrate that the CI was unreliable because he later ceased cooperating with the police. *Id.* at 10.

The court is unconvinced by these arguments and finds that Carter has failed to make the "substantial preliminary showing" required for a *Franks* hearing and is not entitled to relief. In regards to Wagner's calls from detention, the court does not read the affidavit to imply that Wagner called any of the four cellphones from detention. Rather, the affidavit cites Wagner's conversation with Carter and with his girlfriend regarding Carter in support of the broader proposition that, due to the amount of communication between both men, there would likely be evidence of the shooting on Carter's cellphones. In other words, the phone calls demonstrate that Wagner and Carter had a history of exchanging incriminating information over the phone. And based on the probable-cause analysis above, the court finds that, even if the affidavit had explicitly stated that Wagner only called his girlfriend's number, there would have been probable cause to issue the warrant.

Similarly, the presence of two other men in Carter's vehicle does not alter the probable-cause determination. His argument implies that the inclusion of this fact would have led the magistrate to conclude that the three phones found in the vehicle but not on Carter's person belonged to these two other men. This conclusion, however, is unsound, as it does not address why *three* abandoned cellphones in Carter's vehicle would all belong to *two* men. Moreover, the United States counters that, if the cellphones belonged to the two other men, they would be considered abandoned property and no warrant would have been required to search the phones. The two men's presence in the car is thus immaterial to the probable-cause determination.

Finally, the court finds that the affidavit's single-sentence reference to the CI allegedly hearing Wagner and Perkins discuss the shooting is not necessary to finding that probable cause existed to search the cellphones. This fact borders on irrelevant and, at best, provides further context for these fellow gang members discussing incriminating information—even in light of Carter's absence from his own home at the time.

Based on the foregoing, the court finds that none of the information that Carter contends was intentionally or recklessly omitted from Detective Wilson's affidavit would have affected the magistrate's finding of probable cause. And because the court has found that probable cause supported the warrant's issuance, Carter's motion to suppress will be denied.

## IV. Conclusion

IT IS THEREFORE ORDERED that defendant Ricky Carter Jr.'s motion to suppress (ECF No. 23) is **DENIED**.

IT IS SO ORDERED.

DATED this 2nd day of June, 2017.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE